## STATE *v.* EASTMAN.

A justice of the peace throughout the state may take a recognizance in the county in which he lives, of a person charged with a crime in another county, to appear at the court having cognizance of the offense in the latter county, upon his voluntary application.

Such recognizance will be valid, though its condition be to appear at such court, described as held at a day then past, and now in session.

SCIRE FACIAS on a recognizance against Cyrus Eastman and another. The jail of the county of Coös having been burned, an order was made by two Justices of the Supreme Court, agreeably to the statute, that prisoners, then or afterward ordered to be imprisoned within that county, should be removed to and confined in the jail at Haverhill, in Grafton county.

In August, 1859, William A. Dunsyre was ordered, by a justice of the peace of Coös, to recognize, with two sufficient sureties, in the sum of $500, to appear at the Supreme Court, at its next term for that county, on the fourth Tuesday of October following, to answer to the charge of feloniously and knowingly passing as true a false and counterfeited note, and for want of such sureties he was committed to the jail in Haverhill.

At the October term of the court an order of court was made, requiring the sheriff of the county of Coös to bring Dunsyre before the court. In pursuance of this order, he was taken from the jail, and carried, on his way to the court, to Littleton, in Grafton county. At that place, Dunsyre, upon his application, was carried by the sheriff, on the 27th of October, which was Thursday after the fourth Tuesday of October, before a justice of the peace and quorum throughout the state, residing in that town; and Dunsyre, and the two defendants as his sureties, there entered into a recognizance before said justice, conditioned for his appearance at the Supreme Judicial Court,

VOL. XLII. 18

to be held at Lancaster, &c., on the fourth Tuesday of October instant, and "now in session," and there answer to the complaint before recited, and abide the order of the court; and Dunsyre was then suffered by the sheriff to go at large. He did not appear at the court, though duly called, and his recognizance was declared forfeited. The action is founded on this recognizance, and the case was submitted to the court upon an agreed statement of facts.

*Woods* & *Binghams*, for the defendants.

The recognizance was void, first, because taken out of the county where the offense was committed and recognizance ordered; second, because it was taken after the order on which it was founded had expired, and when the magistrate had no jurisdiction.

1. The fact that the recognizance was taken by a justice throughout the state does not vary its effect. It stands as if taken by a justice for Grafton county. Such justices are limited to the same general powers in each county as a justice for the county. *Young* v. *Bride*, 25 N. H. 482. They have special powers (Comp. Stat., ch. 287, secs. 17, 18), but they do not authorize a recognizance like this. *State* v. *Fowler*, 28 N. H. 184. The question, then, is, whether a prisoner, as Dunsyre was, can give to a magistrate of the county through which he is transported a valid recognizance for his appearance at court. In our view, such a recognizance is void. Crimes are local, and all proceedings in reference to punishing them must be had in the county where committed. 4 Bl. Com. 303, 304, 305; Story's Conf. Laws, ch. 16; *State* v. *Moore*, 26 N. H. 448. The authority of justices in taking recognizances is given by statute, and its extent and limits must be sought in statutes. All recognizances taken by them, not authorized by law, are void. *State* v. *Fowler*, 28 N. H. 184; *Commonwealth* v. *Loveridge*, 11 Mass. 337; *Commonwealth* v. *Otis*,

State *v.* Eastman.

16 Mass. 198; *Commonwealth* v. *Canada*, 13 Pick. 86; *Sanborn* v. *Fellows*, 22 N. H. 473; *Guernsey* v. *Edwards*, 26 N. H. 224; *State* v. *Berry*, 8 Me. 174. There is no statute from which such an authority can be deduced.

2. The time had elapsed within which the order of the magistrate, requiring a recognizance, was to be performed, and within which he could make such order, or was bound to return his proceedings to the court. Comp. Stat., ch. 237, sec. 4; *Ex parte Neal*, 14 Mass. 205. This recognizance was based on the order of the magistrate, and was taken after the day of appearance specified was past. The order not having been complied with within the time, the order and the justice's jurisdiction were at an end. The prisoner was not held under the justice's order after the court was in session. He was then subject to the order of the court only. And as no valid recognizance can be taken, except under the order of a magistrate authorized to make it, the recognizance before a justice was invalid. The recognizance was not in conformity to the justice's order; that required an appearance at a future day, but the condition required an appearance forthwith.

*Whidden, Solicitor*, for the state, cited *State* v. *Fowler*, 28 N. H. 184; Rev. Stat., ch. 222, secs. 17, 18; *Young* v. *Bride*, 25 N. H. 482.

BELL, C. J. It is objected to this recognizance that it is void, because, first, it was taken before a justice who had no jurisdiction; second, it required Dunsyre to appear at the court at a day already past.

1. The first is the most material question. It is contended that the authority of justices of the peace in criminal matters, and particularly in taking recognizances, is given by statute, and its extent and limits are to be sought in the statutes. Recognizances not so authorized are void.

It is true that recognizances not authorized by law are void. And as justices of the peace owe their origin to a statute passed in the reign of the third Edward, probably as early as 1360, it must be true that directly or indirectly these officers derive their authority from statutes. Five hundred years have since elapsed, during which very numerous acts of Parliament have been passed, affecting more or less directly the authority and duties of these officers, most of which have partially passed into oblivion, but have doubtless left their impress on the law relating to these officers. During that long period, many thousands of these officers have been constantly acting in the discharge of duties bearing directly upon the personal liberty of the subject. Custom and usage, and the decisions of the higher courts, have, during all that time, been giving shape and form to the law on this subject, as on all others, and though originating in statutes, the law is now to be sought not in those statutes alone, but in the books of reports and works of authority on such subjects.

The office of justice of the peace first made its appearance in New-Hampshire a little less than two hundred years ago, soon after the establishment of the provincial government, probably in 1682. Among the earliest appointments under the new government were a few justices of the peace. Governor Cranfield's commission gave him in express terms the power to appoint justices of the peace, and the statutes passed in November, 1682, conferred upon justices of the peace jurisdiction in civil cases, where the debt or damage did not exceed forty shillings. But no statute affecting their general criminal jurisdiction was passed during the provincial government. See Prov. Laws, 1771, 16. The criminal jurisdiction was constantly exercised as a part of the common law jurisdiction of those magistrates, as is shown by the records of the courts of sessions. And excepting so far as statutes have in a few instances modified their duties, or

State *v.* Eastman.

have been necessary to adapt the exercise of their powers to our institutions, justices now exercise their common law powers, and in the main subject to the limitations of the common law. It may seem from some of the authorities cited, that the powers of these magistrates in some of the states have been so far modified by their state statutes that they can with propriety say that the jurisdiction of justices is to be found in their statutes only. That is certainly not the fact here. So far as we have statutes, they are of course conclusive upon the limits of their powers and duties, but the mass of their authority rests not on our statutes, but upon the common law, as it was brought with them by the colonists from their native country, the combined result of the legislation, judicial decisions, and customs and usages of more than three centuries, modified in some degree by statutes of the mother country subsequently passed, to the time of the revolution.

On the subject of the powers of justices of the peace to let to bail in criminal cases, we have this statute provision. Rev. Stat., ch. 222, sec. 3. "Any justice [of the peace] may cause to be apprehended and committed to jail, or bound over with sufficient sureties for trial by the court of common pleas in said county, all persons charged with offenses committed in such county, exceeding his jurisdiction to try."

Beyond this we have no statute relating to bail of prisoners ordered to recognize. The justice of Coös county ordered Dunsyre to recognize, and on his failure committed him to jail, as he properly might, out of the county.

In the absence of any statutory provision of our own adapted to this case, the common law continues in force. And it is a general principle that by merely affirmative words the authority of an officer is not taken away, unless the common law and the statute are inconsistent with each other. Here the statute recited is a mere recogni-

tion of an undoubted principle of the common law, and in no wise in conflict with the general system of the common law in relation to those officers.

The present case then being one to which our statutes have no application, we have to resort to the common law for a solution of the questions involved in it.

And we take the general rule to be as it is laid down by *Holt*, C. J., Anon., 6 Mod. 179, that "wherever one may be taken up by warrant of one justice, any one justice may bail." The same rule is laid down in Comyn's Digest, Bail F. 4. "Now if one justice by his warrant can apprehend, he can bail."

It follows from this rule that in this state, as one justice may commit or bind over for any offense beyond his jurisdiction to try, so he has in all such cases the power to admit to bail, except in that class of cases where the law does not confer any power to bail, except upon the Supreme Court or its justices. And such is understood to have been the constant usage beyond the time of memory.

The ground assumed by the defendants seems to us substantially to deny that the prisoner Dunsyre, while in the jail at Haverhill, could be admitted to bail by any justice of the peace whatever; not by a justice of Coös, because the prisoner must be personally present with his sureties in order to enter into a recognizance, and the Coös justice, if he should go out of his own county, would be out of his jurisdiction, and would have no power to act; and if the Coös justice were a justice throughout the state, he would have at Haverhill no other or greater power than a justice for the county of Grafton, agreeably to the decision in *Young* v. *Bride*, 25 N. H. 482. And not by a justice of the county of Grafton, because the offense being in its nature local, within the jurisdiction of the courts and magistrates of Coös county, he could have no jurisdiction of the offense.

Neither of these views appears to us to be sound. As to the first we find the law laid down thus, in 3 Bac. Ab. 798, Justices of the Peace E. 5: "Justices of the peace are to exercise their authority as such, within the county wherein they are justices, and can not regularly do a judicial act out of such county. Therefore, if a justice of the peace live or be out of the county wherein he is justice, he can not, by his warrant, fetch a person out of the county whereof he is justice to come before him in the county where he is. And as justices of the peace have no coercive power out of the county, they can not make an order of bastardy, or such like orders, out of their county. But a justice of the peace may do a ministerial act out of the county, such as examine a party robbed, whether he knows the felon according to the statute. Also, by the better opinion, recognizances and informations, voluntarily taken before them in any place, are good, for those, says Lord Chief Justice *Hale*, are acts of voluntary jurisdiction, and may be done out of a county, as well as a bishop may grant administration, institution, or orders out of his diocese; but a justice of the peace can not imprison a person for not giving a recognizance, or commit to prison, for these are acts of compulsory jurisdiction, which he can not exercise out of his proper county. 2 Hale P. C. 51. 2 Hawk. P. C., chap. 8, sec. 29."

This principle is distinctly recognized in *Helier* v. *Hundred of Buchurst*, Cro. Car. 213, where it was held, after conference of many judges and barons, that a justice of the county of Berks, residing in the hundred where a robbery had been committed, might take the oath of the sufferer at his chambers in the middle Temple, though it was objected that it was done out of his jurisdiction as a justice. And *Croke*, J., said, "It is a usual course for justices of the peace to take information against offenders in any place out of the county, to prove offenses in the county where they are committed, and sometimes they

take recognizances to prosecute, and such recognizances, taken out of county by voluntary assent of the parties, bind well enough and are usual."

The distinction stated is held in *Haskell* v. *Haven*, 3 Pick. 407, in relation to a notice to take the poor debtor's oath, and in *Odiorne* v. *Mason*, 9 N. H. 30, in the case of the acknowledgment of a deed.

A justice of the peace of the county of Coös, then, might well have taken the recognizance here in question either at Haverhill or Littleton.

The magistrate, before whom the recognizance was taken, was a justice throughout the state, and equally a justice for the county of Coös with any justice appointed for that county alone, and he could consequently rightfully do in the county, or out of it, any judicial or ministerial act, which a justice for that county could properly do.

But it is not necessary to resort to this train of argument, though it seems to us entirely satisfactory and conclusive, because, by section 17 of chapter 222 of the Revised Statutes, express authority is given "to any justice of the peace throughout the state" to "receive a complaint for an offense committed in any county in this state, and issue his warrant thereon, directed to the sheriff of any county in the state, or his deputy, or any proper officer, authorizing him to apprehend such offender, and to bring him before such justice, or some justice in and for the county in which the offense was committed, for examination;" and, by section 18, such justice may order such offender to recognize, with sufficient sureties, to appear at the court of common pleas next to be held in and for the county in which the offense was committed, &c.

Now, by the rule of Lord *Holt*, if a justice of the peace throughout the state can arrest by his warrant, in this case, any other such justice may admit to bail. And this is a just and reasonable conclusion from the action

State *v.* Eastman.

of the legislature on this subject. The same policy, which enables a justice throughout the state to issue his warrant in Rockingham for the arrest of a party there, charged with an offense in Coös, could hardly be satisfied, if the party arrested could not give bail without going and taking with him his sureties to Coös.

We have, then, no doubt that this recognizance was well taken, so far as the power of the justice is concerned, and that, in the language of Judge *Croke*, it binds well enough.

As to the second objection, we think it is without any just foundation in the language of the instrument. We are bound to read the recognizance so as to give it effect, if it can by law be done ; and a construction, which would defeat its operation, and deprive it of all legal effect, is forbidden by law, unless it can not reasonably admit of any other. *Richardson* v. *Palmer*, 38 N. H. 218.

The condition is, that said Dunsyre shall appear at the Supreme Judicial Court, held at Lancaster, in and for said county of Coös, on the fourth Tuesday of October instant, and now in session, and there answer to the complaint aforesaid, &c. It is said the time at which Dunsyre was ordered to recognize to appear, was already passed ; but the court to which he was ordered to recognize had not passed. The order was to find sureties to appear at the court to be held on the fourth Tuesday of October [then] next. The recognizance was to appear at the court held on the fourth Tuesday of October instant, and now in session. It is evidently the same court referred to in the order, and it does not appear, nor is it suggested, that there was any difficulty in attending it.

But the occasion of taking this recognizance is not to be forgotten. It was not a compulsory, but a voluntary proceeding. The principal was in the hands of an officer of the law, and applied to the justice to be received on bail. If the justice had proposed a different sum, or, on

learning the adjournment of the court, had taken the recognizance to the next term of the court, it would not be for the recognizors, thus voluntarily appearing, to object to what was done. And this objection must be overruled.

The conduct of the parties to this transaction can hardly escape censure. The sheriff had Dunsyre in his custody, under an order of the Supreme Court to bring him in person before them. It was improper for him to disregard his precept, and allow his prisoner to go before a magistrate, or to go at large upon any order but that of the court. The magistrate, though he had power, could not properly interfere with the orders of the court while in session.

If there was a design to aid the escape of Dunsyre from justice, on the part of any one, as seems probable, it might be a proper case for an indictment.

*Judgment for the state.*